**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANGELA LAVIGNA,**

                    **Plaintiff,**                    **1:07-cv-949**
                                                      **(GLS/RFT)**

          **v.**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**

                    **Defendant.**
_____
**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Craig Meyerson                  CRAIG MEYERSON, ESQ.
Airport Park
17 British American Boulevard
Latham, NY 12110

**FOR THE DEFENDANT:**
Nixon, Peabody Law Firm                   JOHN E. HIGGINS, ESQ.
677 Broadway, 10th Floor
Albany, NY 12207

**Gary L. Sharpe**
**District Court Judge**


**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

Plaintiff Angela LaVigna commenced this action against defendant

State Farm Mutual Automobile Insurance Company, alleging that it violated New York State Human Rights Law (NYSHRL)[1] and the Employment Retirement Income Security Act (ERISA)[2] when it terminated her employment.  (*See* Am. Compl., Dkt. No. 28.)  Pending is LaVigna's appeal from Magistrate Judge Randolph F. Treece's October 13, 2009 Order. (*See* Dkt. No. 142; *see also* Oct. 13, 2009 Order, Dkt. No. 137.)  Also pending are State Farm's motion for summary judgment, and LaVigna's motion for summary judgment, motion to preclude an affidavit and certain exhibits submitted by State Farm, motion to amend the complaint, and motion to disregard State Farm's March 23, 2010 reply memorandum of law.  For the reasons that follow: (1) LaVigna's appeal (Dkt. No. 142) is denied; (2) State Farm's motion for summary judgment (Dkt. No. 154) is granted in part and denied in part; (3) LaVigna's motion for summary judgment (Dkt. No. 153) is denied; (4) LaVigna's motion to preclude (Dkt. No. 162) is denied; (5) LaVigna's motion to amend (Dkt. No. 162) is denied; and (6) LaVigna's motion to disregard (Dkt. No. 170) is denied.

## II. Background

---

[1] N.Y. EXEC. LAW § 290, *et seq.*

[2] 29 U.S.C. § 1001, *et seq.*

**A.**     <u>**Factual History**</u>

Plaintiff Angela LaVigna began her employment with defendant State Farm on April 14, 1997.  (Pl. SMF ¶ 12, Dkt. No. 153:11.)  On February 17, 2006, LaVigna took leave from work to undergo surgery with neurosurgeon Dr. Thomas McCormack to alleviate problems related to her lumbar spine and to relieve her corresponding leg and lower back pain.  (*See id.* at ¶¶ 65-67.)  At the time, LaVigna held the full-time position of Special Risk Assistant on the Policy, Service, Typist Team in Central Underwriting at State Farm's Ballston Spa Office.

LaVigna returned to work on July 14, 2006, subject to some restrictions recommended by Dr. McCormack, which were accepted by State Farm.  (*See id.* at ¶¶ 69, 71.)  Among Dr. McCormack's recommendations were that LaVigna should return to work on a part-time basis initially, and that she could not continuously stand or sit for more than one hour, thereby requiring her to alternate between sitting and standing on an hourly basis.  (*See* LaVigna Aff., Exs. K, L, Dkt. No. 153:13.)  On July 21, 2006, Rob Arsenault, a member of the Environmental Health and Safety Department of State Farm's Ballston Spa Office, performed an ergonomics review of LaVigna's workstation to determine whether her

3

workstation, including her desk, chair, keyboard, and monitor, was properly configured to meet her needs and limitations.  (*See* Pl. SMF ¶ 88, Dkt. No. 153:11.)  In the review, which was limited to evaluating a person sitting in a chair at a stationary desk, Arsenault noted that he reviewed the adjustable positions available on LaVigna's current chair, discussed use of her foot rest, and requested that a document holder be provided to her.  (*See* LaVigna Aff., Ex. M, Dkt. No. 153:13.)  However, LaVigna asserts that this was a garden-variety, non-individualized review in which Arsenault failed to fully inquire about and identify her limitations and symptoms, noting merely neck and shoulder strain.  (*See* Pl. SMF ¶¶ 89-99, Dkt. No. 153:11.)  In addition, LaVigna contends that State Farm never performed a follow-up review and never provided a document holder, a new chair, or any additional changes to her workstation.  (*See id.*)  However, the parties dispute the extensiveness of Arsenault's review, the nature of LaVigna's complaints and requests during and after the review, and the manner in which State Farm representatives attempted to address her concerns following the July 21 review.

On July 27, 2006, LaVigna increased her daily work hours from four to five, which was the rate she continued to work at until August 2, 2006.

(*See id.* at ¶ 101.)  During this time, LaVigna complained to State Farm's representatives, including Arsenault, Amy Monroe, and Beth Speanburg, that her workstation was irritating her condition, that her chair and footrest were not properly configured, and that the chair did not provide adequate lumbar support and could not be adjusted due to a faulty knob.  (*See id.* at ¶¶ 102-15.)  In response, on July 28, 2006, LaVigna received a letter from Speanburg, State Farm's Senior Occupational Health Nurse, discussing the ergonomics of her workstation, asking if she is manipulating her chair and using the footrest, and stating that she would look at LaVigna's chair and footrest again on Monday, July 31.  (*See* LaVigna Aff., Ex. N, Dkt. No. 153:13.)  However, LaVigna contends that no one ever returned to examine or evaluate her workstation.  At the same time, on July 28, State Farm's Human Resources Director, Irene Kestner, informed LaVigna that she would need to return to work without restrictions and on a full-time basis by August 16, 2006—though State Farm contends that this was not the first time LaVigna was so notified.  (*Compare* Pl. SMF at ¶ 122, Dkt. No. 153:11,*with* Def. Resp. SMF ¶ 122, Dkt. No. 164.)  LaVigna further alleges that Speanburg also directed her to take a leave from work.  (*See* Pl. SMF ¶ 120, Dkt. No. 153:11.)

5

LaVigna took leave from work on August 3, 2006, as per Dr. McCormack's instructions.  (*See id.* at ¶ 39.)  Shortly thereafter, on August 16, 2006, State Farm terminated her employment, based on the expiration of illness benefits.  (*See id.* at ¶ 42.)

At the time of LaVigna's termination, State Farm was the administrator of the State Farm Group Long Term Disability Insurance Plan, of which LaVigna was a participant or beneficiary as defined by ERISA.  (*See id.* at ¶¶ 1-2; *see also* Meyerson Aff., Ex. J, Dkt. No. 153:5.)

## B.   Procedural History

On August 14, 2007, LaVigna filed suit in New York State Supreme Court, Saratoga County, against State Farm, Life Insurance Company of North America, also known as CIGNA Group Insurance, and Hartford Life and Accident Insurance Co., for violations of ERISA, NYSHRL, and the ADA.[3]  (*See* Compl., Dkt. No. 1:1; *see also* Am. Compl., Dkt. No. 28.)  On September 13, 2007, the action was removed to the United States District Court for the Northern District of New York based on federal question jurisdiction under 28 U.S.C. § 1331.  (*See* Dkt. No. 1.)  CIGNA and Hartford Life were subsequently terminated from the action.  (*See* Dkt. No. 9; Jan.

---

[3]Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

6

18, 2008 Text Order.)  In addition, LaVigna's ADA claims and the claims contained in Count One of her amended complaint were dismissed.  (*See* Aug. 8, 2008 Order, Dkt. No. 49; *see also* Aug. 7, 2008 Minute Entry.)

An unnecessarily contentious period of discovery ensued, requiring frequent intervention by the court, the history of which has been told and retold by both Judge Treece and this court on several previous occasions. On June 22, 2009, Judge Treece extended the deadline for expert disclosures and depositions, but held that discovery as to any other matters was concluded and that "no other demand for discovery is allowed ... [and] no further extensions shall be considered."  (*See* June 22, 2009 Order at 2, Dkt. No. 121.)  Still, despite her representations that she would not be deposing State Farm's experts, LaVigna served a subpoena duces tecum dated September 16, 2009, on State Farm's attorneys seeking documents that may have been exchanged with State Farm's experts.  (*See* Oct. 13, 2009 Order at 2-3, Dkt. No. 137.)  LaVigna's counsel then submitted a letter motion to Judge Treece seeking an order compelling State Farm to comply with the subpoena, alleging that the subpoena was merely prompted by State Farm's failure to comply with LaVigna's November 17, 2008 Notice to Produce.  (*See* Dkt. No. 132.)

7

In ruling on LaVigna's motion, Judge Treece first found that LaVigna failed to demonstrate either that State Farm's expert notifications and disclosures had been deficient under FED. R. CIV. P. 26 or that State Farm had failed to comply with LaVigna's November 17, 2008 Notice to Produce. (*See* Oct. 13, 2009 Order at 4-5, Dkt. No. 137.)  Judge Treece then denied LaVigna's motion to compel due to her failure to establish good cause to extend the discovery deadline, and granted an order protecting State Farm from the September 16, 2009 subpoena.  (*See id.* at 6-7.)  In response, LaVigna appealed Judge Treece's ruling.  (*See* Dkt. No. 142.)

Upon the conclusion of all discovery, the parties filed vying motions for summary judgment.  (*See* Dkt. Nos. 153, 154.)  In addition, LaVigna moved to preclude from evidence the affidavit of Christopher Farnum and the exhibits accompanying the affidavit, and moved for permission to amend her complaint.  (*See* Dkt. No. 162.)  LaVigna also moved to strike State Farm's reply memorandum of law, contending that since it was filed on March 23, 2010, one day after the March 22, 2010 deadline, it was untimely and should be disregarded.  (*See* Dkt. No. 170.)

### III.  Discussion

### A.  Appeal of Judge Treece's Order

8

When reviewing an appeal from a pretrial non-dispositive motion decided by a magistrate judge, the court will affirm the order unless it is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a).  This standard governs a district court's review of a magistrate's orders concerning discovery disputes.  *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).  Under a clearly erroneous standard, a district court can reverse a magistrate judge's order only if the court "is left with the definite and firm conviction that a mistake has been committed."  *See Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir. 2004) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Under a contrary to law standard, a district court can reverse a magistrate judge's order only if the order fails to apply the relevant law.  *See Olais-Castro v. United States*, 416 F.2d 1155, 1158 n.8 (9th Cir. 1969) ("The term 'contrary to law' means contrary to any existing law.") (citing *Callahan v. United States*, 285 U.S. 515, 517 (1932)).  "[M]agistrate judges are afforded broad discretion in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused."  *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 90 (S.D.N.Y. 2002).

As already discussed, LaVigna contends that Judge Treece erred in

9

denying her motion to compel State Farm's compliance with the November

17, 2008 Notice to Produce and the September 16, 2009 subpoena.  (*See*

Dkt. No. 142:2.)  However, in light of the court's prior orders, and having

reviewed the nature of the requests, the underlying record, and the parties'

arguments, the court finds that LaVigna has failed to show that Judge

Treece's ruling was clearly erroneous, contrary to law, or an abuse of

discretion.  Consequently, the court affirms Judge Treece's decision to

deny LaVigna's motion to compel and to grant protection to State Farm.

**B.**   **Motion to Disregard**

LaVigna contends that State Farm's reply memorandum of law, (Dkt.

No. 169), should be disregarded by the court because it was filed a day

late.  (*See* Dkt. No. 170.)  However, in addition to the fact that State Farm

submitted all of its related declarations, affidavits, and exhibits on time, the

court is satisfied with the justifications and assurances provided by State

Farm's counsel.  (*See* Dkt. No. 173.)  Therefore, because State Farm's

one-day delay did not result in any appreciable harm or prejudice to

LaVigna, the motion to disregard is denied, and State Farm's reply

memorandum will be given its due consideration.[4]

## C.   **Motion to Preclude**

Rule 26(a) of the Federal Rules of Civil Procedure places an affirmative obligation on each party to provide the other party with the name, address, and telephone number of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses."  FED. R. CIV. P. 26(a)(1)(A)(i).  Furthermore, where a party who has made a disclosure "learns that in some material respect the disclosure or response is incomplete or incorrect," then that party is obligated to supplement or correct the disclosure in a timely manner.  FED. R. CIV. P. 26(e)(1)(A).  And "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party [will] not [be] allowed to use that information or witness to supply evidence on a motion ... or at trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).  In enforcing these rules, the court may impose sanctions, which where appropriate, include precluding the testimony.  *See, e.g.*, *Patterson v.*

---

[4]In addition, the court reasserts its March 25, 2010 ruling, (*see* Dkt. No. 175), which denied LaVigna's request for leave to file a reply to State Farm's papers submitted in response to her March 15, 2010 cross-motion.  Such a filing is neither necessary nor warranted here, as the court is already swimming in a sea of repetitious, overlapping, and peripheral submissions.

*Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *Great White Bear, LLC v. Mervyns, LLC*, No. 06 Civ. 13358, 2008 WL 2220662, at *5-6 (S.D.N.Y. May 27, 2008). However, the rules operate under the principle that preclusion "is a somewhat harsh remedy, because of its obvious effect of depriving the court and finder of fact of otherwise potentially relevant information to be used in deciding the issues in the case." *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F. Supp. 2d 197, 247 (N.D.N.Y. 2004) (citation omitted). Thus, "[i]mposition of sanctions under Rule 37 is a drastic remedy and should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (citations omitted).

Here, LaVigna contends that State Farm should be precluded from relying on the affidavit of Christopher Farnum and the accompanying exhibits. (*See* Pl. Resp. Mem. of Law at 2-4, Dkt. No. 162:18.) She argues that State Farm is in violation of Rule 26 requirements due to both its initial failure to identify Farnum as an individual likely to have discoverable information concerning State Farm's asserted defenses, and its subsequent failure to supplement the disclosure. (*See id.*)

Having acknowledged the failure to supplement its disclosures, State Farm, through its counsel, first pleads ignorance, stating that it believed the individuals who were disclosed "were the [ones] most likely to have knowledge of defendants' defenses ... [and] did not know at [the time the disclosures were made] what exactly Mr. Farnum knew about the defenses raised in defendants' [a]nswer." (Def. Reply Mem. of Law at 18, Dkt. No. 169.) Second, State Farm points out that since Farnum worked closely with and supervised LaVigna during the period leading up to her termination, LaVigna had full awareness of Farnum's role and involvement in the events at issue here. (*See id.*) Third, State Farm identifies at least two dozen documents that were turned over to LaVigna between November 7 and December 22, 2008, naming Farnum as LaVigna's supervisor. (*See* Higgins Aff. ¶¶ 44-46, Dkt. No. 167; *see also* Higgins Aff., Exs. F, G, Dkt. No. 167:3.) Fourth, State Farm notes that many of these documents were already in LaVigna's possession, as evidenced by LaVigna's production of approximately fifty pages of documents in which Farnum's name appears. (*See* Higgins Aff. ¶¶ 47-48, Dkt. No. 167; *see also* Higgins Aff., Ex. H, Dkt. No. 167:4.) Lastly, State Farm highlights that Farnum and his role in this matter were discussed during the depositions of

Amy Monroe, Irene Kestner, Rob Arsenault, Beth Speanburg, and LaVigna

herself.  (*See* Higgins Aff. ¶¶ 49-50, Dkt. No. 167; *see also* Higgins Aff.,

Exs. I, J, K, L, M, Dkt. No. 167:5.)

The court believes that preclusion under these circumstances is

unwarranted.  Although this is not a case where the disclosing party was

unable to comply with its obligations through no fault of its own, *see Cine*

*Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d

1062, 1066 (2d Cir. 1979), it is also not a case where the disclosing party

waited until the eve of trial to disclose its witnesses, *see Patterson*, 440

F.3d at 117-18.  State Farm's assertions suggest that the decision to offer

Farnum's affidavit was made in reaction to the changing trajectory of the

case,[5] and was not made deceptively or in bad faith.  Moreover, in light of

the factual background and the bounty of witnesses, documents, and other

evidence that the parties have produced, State Farm's failure to disclose

Farnum as a witness was harmless, particularly since the information

---

[5]It is particularly noteworthy that LaVigna was actually the first in motion practice to reference Mr. Farnum as her direct supervisor.  Specifically, in filing her motion for summary judgment on February 21, 2010, LaVigna refers to Farnum twice, pointing to an ADA Management Questionnaire he completed on August 2, 2006.  (*See* Pl. Mem. of Law at 22-23, Dkt. No. 153:12 (citing Meyerson Decl., Ex. F, Dkt. No. 153:5).)  It was not until March 15, 2010, that State Farm offered Farnum's affidavit, with exhibits attached.  (*See* Dkt. No. 163.)  Thus, State Farm filed Farnum's affidavit over three weeks after LaVigna's original reliance on Farnum and the documents he prepared.

contained in Farnum's affidavit and exhibits is largely duplicative of other evidence already on record.  While the court does not look lightly upon State Farm's failure to supplement its disclosures, the court nonetheless will accept Farnum's affidavit and the annexed exhibits into evidence and will consider them to the extent they are of any consequence.  Accordingly, LaVigna's motion to preclude is denied.

**D.    Summary Judgment**

The standard for the grant of summary judgment is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

**1.    Discriminatory Discharge**

Disability discrimination claims brought pursuant to NYSHRL, N.Y. EXEC. LAW § 296, are governed by the same legal standards that govern federal ADA claims.  *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006).  Accordingly, like a plaintiff who brings an action under the ADA, a plaintiff suing under NYSHRL for disability discrimination has the initial burden of establishing a prima facie case.  *See Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).

In making out a prima facie case of discriminatory discharge based on a disability, the plaintiff must show that: "(1) [she] is a person with a disability under the [statute]; (2) an employer [subject to] the statute had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Id.* "[A]n individual cannot perform the essential functions of a job if [she] is completely unable to work regardless of accommodation." *Henzel v. Del. Otsego Corp.*, 285 F. Supp. 2d 271, 276-77 (N.D.N.Y. 2003) (collecting cases). The plaintiff must demonstrate that she was "otherwise qualified" for the job, meaning "she is able to perform the essential function of that job, either with or without a reasonable accommodation." *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99-100 (2d Cir. 2003) (internal quotation marks and citation omitted). A "reasonable accommodation" cannot involve the elimination of a function that is essential or fundamental to the job. *See id.* (citation omitted); *see also* N.Y. EXEC. LAW § 292(21) (stating that, in the employment context, the disability must "not prevent the [plaintiff] from performing in a reasonable manner the activities involved in the job"); *see, e.g.*, *Messer v. Bd. of Educ. of City of N.Y.*, No. 01-CV-6129, 2007 WL 136027, at *10-11 (E.D.N.Y.

16

Jan. 16, 2007).  A "reasonable accommodation is ... that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question."  *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995); *see, e.g.*, *Graves v. Finch Pruyn & Co.*, 353 Fed. Appx. 558, 560-61 (2d Cir. 2009) (unpublished) (holding that a plaintiff asserting a leave of absence as a reasonable accommodation must demonstrate that the leave would have enabled him to perform his job's essential functions "at or around the time at which" the accommodation was sought).  The burden of showing the reasonableness of an accommodation is "not a heavy one," but rather is one of production, which simply requires "the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."  *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).  Additionally, "it is the employee who has the burden to identify an accommodation, [while] the employer is obliged to take affirmative steps to assist the employee in this process."  *Vosburgh v. Am. Nat'l Red Cross*, No. 5:08-CV-00653, 2009 WL 3644196, at *9 (N.D.N.Y. Oct. 27, 2009) (citing *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 568 n.4 (2d Cir. 2000)).  Where the plaintiff satisfies the first three elements of a prima facie case, the employer's failure to make

reasonable accommodations can "amount[] to discharge because of [her] disability."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000) (internal quotation marks and citation omitted).

Once the plaintiff establishes a prima facie case of disability discrimination, the burden shifts to the employer to demonstrate that the proposed accommodation is unreasonable.  *Borkowski*, 63 F.3d at 138. The employer must show "(1) that making a reasonable accommodation would cause it hardship, and (2) that the hardship would be undue." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) (citation omitted); *see also Sch. Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 287 n.17 (1987) ("Accommodation is not reasonable if it either imposes undue financial and administrative burdens on an [employer], or requires a fundamental alteration of the nature of the program." (internal quotation marks and citations omitted)).  In making this showing, the employer must perform a cost-benefit analysis, which includes consideration of, among other things, the nature and cost of the accommodation, the size of the employer's budget, the composition and structure of the employer's workforce, "the industry to which the employer belongs[, and] the individual characteristics of the particular defendant-

employer." *Borkowski*, 63 F.3d at 139.  Importantly, though, this analysis does not require "mathematical precision"; instead, "a common-sense balancing of the costs and benefits in light of [the relevant factors] is all that is expected." *Id.* at 140.

Here, State Farm concedes that LaVigna is disabled for NYSHRL purposes, and that, as an employer subject to NYSHRL's prohibitions, it had notice of LaVigna's disability.[6]  (*See* Def. Mem. of Law at 15-16, Dkt. No. 154:2.)  However, State Farm argues (1) that LaVigna never identified or requested a reasonable accommodation that was refused by State Farm, (2) that no reasonable accommodation could have enabled LaVigna to perform the essential functions of her job in a reasonable manner, and (3) that LaVigna's proposed part-time accommodation was unreasonable and would have caused an undue hardship.  (*See id.* at 15-22.)  In response, LaVigna contends that she has satisfied all of the elements of a

---

[6]Upon a close reading of State Farm's arguments, it appears State Farm acknowledges that it was on notice that LaVigna was disabled, but contends that it was unaware of the magnitude of her disability.  Essentially, State Farm argues that LaVigna failed to make the necessary requests to alert its representatives to the need for additional accommodations beyond the advice provided by Arsenault, Speanburg, and others regarding use of her foot rest, adjustment of her chair, and other workplace modifications.  While such an argument may implicate the second element of the prima facie case, *see Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134-36 (2d Cir. 2008), State Farm appears to argue this point in the context of LaVigna's alleged failure to request or identify the appropriate accommodations.  Accordingly, the court will address the question of specific awareness in the context of the interactive process analysis, and as a question distinct from the question of notice.

prima facie case and that the proposed accommodations, including a sit-stand workstation, an appropriate chair, and a part-time work schedule, are reasonable and would not have imposed an undue hardship on State Farm.  (*See* Pl. Mem. of Law at 17-24, Dkt. No. 153:12.)

However, contrary to both LaVigna and State Farm's assertions, genuine issues of material fact remain that render summary judgment inappropriate at this juncture.  First, there are central disputes of fact as to whether and to what extent LaVigna's requests and complaints were sufficient to establish and alert State Farm to the need for the additional accommodations that LaVigna now proffers.  Likewise, it is unclear whether State Farm took the appropriate steps in inquiring into LaVigna's needs and in identifying and providing her with accommodations that were reasonable and adequate.  *See Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997) ("[B]oth parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith.").  Second, although the parties seem to be in relative agreement as to what the essential functions of a Special Risk Assistant are,[7] there remains an

---

[7]Notwithstanding State Farm's assertions that sitting was an essential function of her job and that LaVigna admitted as much, the court is inclined to agree with LaVigna that "sitting is not an essential job duty," but rather is merely one of the physical postures that a person could maintain in performing the functions that are essential to her job.  (*Compare* Def. Mem.

ardent dispute about whether LaVigna was otherwise qualified for that position, i.e., whether she was able to perform the essential functions of this position with assistance.  While State Farm highlights pieces of testimony from LaVigna and her experts[8] as dispositive of her inability to perform her job functions even with accommodations, LaVigna directs the court to instances in the same testimony or other evidence that, at a minimum, muddies the water.  Thus, while certain evidence may seem conclusive when viewed in isolation, the record viewed in its totality reveals questions of fact and credibility that are best left for a factfinder to resolve.

As to State Farm's burden, the court is unable to decide whether LaVigna's proposed accommodation of further part-time employment was reasonable under the circumstances—particularly in light of her prolonged absence from work following her surgery, her subsequent withdrawal from work on August 3, and the lack of assurances provided by Dr. McCormack

---

of Law at 8-9, Dkt. No. 154:2, *with* Pl. Mem. of Law at 18, Dkt. No. 153:12.)

[8]Despite State Farm's objections, (*see* Def. Resp. Mem. of Law at 19-23, Dkt. No. 163), the court is satisfied that LaVigna has sufficiently established the basis for Brenda Breen's proffered testimony and that such testimony is expert in nature, rests on reliable and testable foundations, is based on sufficient facts, and is relevant to the issues about which she intends to testify.  *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-95 (1993); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 48 (2d Cir. 2004) (discussing the several factors courts may consider in determining the reliability of expert testimony).  The guts of State Farm's objections go to the weight to be accorded Ms. Breen's testimony, which is generally a task that is in the jury's province to perform.

as to the effect this accommodation would have on her ability to perform

the essential functions of her job—and whether it would have worked an

undue hardship on the functioning of State Farm's Ballston Spa Office

overall or the Central Underwriting Unit specifically.  *See Graves*, 353 Fed.

Appx. at 560-61.  Such a fact-intensive inquiry is for a jury to perform.

Therefore, for these reasons, the court denies both LaVigna and State

Farm's motions for summary judgment on the issue of discriminatory

discharge under NYSHRL.

## 2.    ERISA's Disclosure Requirements

"Administrators of employee benefit plans governed by ERISA are

subject to the stringent disclosure duties set forth under 29 U.S.C. §§ 1024

and 1025."  *Pagovich v. Moskowitz*, 865 F. Supp. 130, 135 (S.D.N.Y.

1994).  Section 1024 provides that on a written request of any participant or

beneficiary, the plan administrator must "furnish a copy of the latest

updated summary, plan description, and the latest annual report ... or other

instruments under which the plan is established or operated."  29 U.S.C. §

1024(b)(4); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

118 (1989) (noting that Congress's purpose in enacting the ERISA

disclosure provisions was to ensure "that the individual participant knows

22

exactly where he stands with respect to the plan") (internal quotation marks and citation omitted).  An administrator must comply with a request made pursuant to § 1024(b)(4) by mailing the requested material to the participant or beneficiary within thirty days of the request.  *See* 29 U.S.C. § 1132(c)(1).

Section 1132, which is the enforcement mechanism for ERISA's disclosure provisions, further provides that a failure to timely comply with the request "may in the court's discretion [render the administrator] personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal."  *Id.*; *see also* 29 C.F.R. § 2575.502c-1 (increasing the maximum civil monetary penalty for violating § 1132(c)(1) from $100 to $110 per day).  "The imposition of penalties for violating [§ 1024(b)(4)] is left to the discretion of the district court." *McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 163 (2d Cir. 2003) (citation omitted).  In exercising this discretion, the court should consider the following factors: "(1) the administrator's bad faith or intentional conduct; (2) the length of the delay; (3) the number of requests made; (4) the extent and importance of the documents withheld; and (5) the existence of any prejudice to the participant or beneficiary."  *Id.* (internal

quotation marks and citation omitted); *see, e.g.*, *Campanella v. Mason Tenders' Dist. Council Pension Plan*, 299 F. Supp. 2d 274, 293 (S.D.N.Y. 2004) (denying penalties where the documents requested would not have affected the resolution of the claims at issue and where participant failed to allege bad faith, failed to demonstrate prejudice, and made only two requests over a two and one-half year period); *Scarso v. Briks*, 909 F. Supp. 211, 214-15 (S.D.N.Y. 1996) (awarding penalties based on the administrator's repeated unexcused refusals and the prejudice that resulted to the participant in having to commence suit).  However, the presence or absence of any one of the factors, including prejudice, is not dispositive on the issue of sanctions.  *See, e.g.*, *Cherry v. Toussaint*, No. 01 Civ. 6726, 2003 WL 21767759, at *4 (S.D.N.Y. July 30, 2003).

Here, the parties do not dispute that after her termination, LaVigna made repeated requests for the documents governing State Farm's Long Term Disability Plan.  In a letter dated February 5, 2007, LaVigna requested that State Farm provide her with, inter alia, "[d]ocuments governing the operation of the State Farm Group Long Term Disability Plan for U.S. Employees including insurance contracts summary plan descriptions governing Mrs. LaVigna's claim for long term disability benefits

and latest annual report (Form 5500 Series)."  (Meyerson Decl., Ex. G, Dkt. No. 153:5.)  On April 6, 2007, LaVigna sent a second letter to State Farm reasserting her request for these documents.  (*See* Meyerson Decl., Ex. H, Dkt. No. 153:5.)  State Farm responded to the letters on April 10, 2007, but failed to provide the summary plan descriptions (SPD) or the latest annual report.  (*See* Meyerson Decl., Ex. I, Dkt. No. 153:5.)

However, because the parties both assert conflicting (and at times erroneous) facts as to which documents were disclosed and when, the court is at a loss as to when the SPD was provided and whether the annual report was ever produced.  LaVigna contends that the SPD was not served on her until Febrary 12, 2008, when State Farm moved to dismiss her amended complaint.  (*See* Pl. SMF ¶ 11, Dkt. No. 153:11; *see also* Nowell Aff., Ex. A, Dkt. No. 30:6.)  Yet, the docket shows that LaVigna received the SPD on December 14, 2007.  (*See* Nowell Aff., Ex. G, Dkt. No. 23:13.)  Meanwhile, State Farm asserts that the SPD was available to LaVigna during her employment on State Farm's intranet site, and that it also provided a hardcopy of the SPD to her on May 17, 2006.  (*See* Def. SMF. ¶¶ 309-23, Dkt. No. 154:1.)  Relying on these two facts, State Farm concludes that it was under no obligation to provide additional copies of the

SPD.  State Farm also seems to argue, as it did in its February 12, 2008 motion to dismiss, that although it is listed in the SPD as the plan administrator, it was under no obligation to provide the requested documents as a result of CIGNA's appointment as the fiduciary.[9]  (*See* Def. Mem. of Law at 24, Dkt. No. 154:2; *see also* Def. Mot. to Dismiss Mem. of Law at 23-24, Dkt. No. 32.)  Lastly, State Farm contends that LaVigna cannot demonstrate that she has suffered any prejudice from the failure to disclose, and that such an absence of prejudice should be fatal to her claim for sanctions.  (*See* Def. Mem. of Law at 24-25, Dkt. No. 154:2.)

    As a preliminary matter, State Farm's assertion of non-liability as plan administrator is neither factually nor logically sound.  Although the SPD states that "[t]he plan administrator [State Farm] has appointed the insurance company [CIGNA] as the named fiduciary for adjudicating claims for benefits under the Plan," the court is unable to find any assertion in the SPD suggesting that State Farm is excluded from § 1024's obligations or § 1132's penalties.  (*See* Nowell Aff., Ex. A, SPD at 19, Dkt. No. 30:6.)

---

[9]The court has afforded State Farm's argument a liberal interpretation, since State Farm merely states in conclusory fashion without further explanation that "only the plan administrator is subject to penalties for a failure to disclose ... [and] the Plan simply cannot be held liable for an alleged failure to disclose and any such claim in [LaVigna's] [a]mended [c]omplaint must be dismissed."  (Def. Mem. of Law at 23, Dkt. No. 163 (citing *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672 (7th Cir. 2002)).)

Rather, the SPD makes clear that "copies of any or all of the [plan] documents will be furnished ... [u]pon written request to the Human Resources Department - Benefits and Services, State Farm Insurance Companies."  (*See id.* at 28.)  Equally important, a participant would be placed in an untenable position if she were required to know the contents of the SPD in order to request a copy of the very same SPD.

Next, State Farm's assertion that because it already provided LaVigna with a hardcopy of the SPD on May 17, 2006, and because LaVigna had access to the plan documents during her employment, it was under no further obligation to provide another copy of the plan documents is also unpersuasive.  As instructed by the Supreme Court, where there is a question as to whether the party requesting plan documents is actually entitled to such documents, "a rational plan administrator or fiduciary would likely opt to provide a claimant with the information requested if there is any doubt."  *Firestone*, 489 U.S. at 118.  The court is confident that this rationale applies in the present context, "especially [since] the reasonable costs of producing the information can be recovered."  *Id.* (citation omitted); *see also* 29 C.F.R. § 2520.104b-30(a) ("The plan administrator of an employee benefit plan may impose a reasonable charge to cover the cost

27

of furnishing ... [t]he latest updated summary plan description, and the latest annual report ...."). If there was a doubt as to whether State Farm was obligated to accede to LaVigna's February 2007 plan document requests, then the doubt should have been resolved in favor of providing new copies of the documents. Moreover, although the amount of time between May 2006 and February 2007 is not substantial, the significance of the events that occurred during that time—including LaVigna's termination and consequent need to evaluate the terms of her benefits—weighs in favor of compliance and disclosure. In addition to these critical developments, the record is silent as to whether the plan documents provided to LaVigna on May 17, 2006, are the same as the documents that she requested on February 5, 2007, namely those that governed the Plan on the date of her termination. *See, e.g.*, *Darrah v. Mont. Retail Store Empls. Health & Welfare Plan*, No. CV-08-67, 2009 WL 1395476, at *11 (D. Mont. May 14, 2009).

Nonetheless, putting these legal conclusions aside, the parties have still not placed the court in a position to decide whether LaVigna is entitled to a monetary award for State Farm's failure to provide the requested plan documents. The foggy nature of the factual landscape is only thickened by

the parties' convoluted and unfocused legal arguments.  It is unclear

whether and when State Farm actually provided LaVigna with the

requested plan documents.  Furthermore, the parties have failed to

address which factors the court should consider and how such factors

apply under the present conditions.  Accordingly, the court denies the

parties' motions for summary judgment as to LaVigna's claim that State

Farm violated ERISA's disclosure requirements.  However, insofar as State

Farm has still not provided LaVigna with any of the plan documents that

were requested on February 5, 2007—in particular, the annual reports—the

court orders State Farm to do so without further delay.[10]

## 3.    Count Five

Since the filing of her amended complaint, the court has labored to

ascertain exactly what basis of liability LaVigna is asserting in Count Five.

In fact, the court has even struggled to name the claim, settling on the "Sick

and Medical Leave Claim" at the August 7, 2008 pre-discovery motion

hearing.  (*See* Hr'g Tr. at 18, Dkt. No. 54.)  Essentially, LaVigna claims in

Count Five that State Farm violated its employment benefits policies and

ERISA by terminating her before exhaustion of the 180-day combination of

---

[10]This ruling does not in any way constitute or countenance a reopening of discovery.

paid sick and medical leave to which she was entitled.  (*See* Am. Compl.,

¶¶ 67-69, Dkt. No. 28.)

Upon review of LaVigna's submissions regarding the pending

motions, it appears that she has all but abandoned her claim that her

premature termination amounts to a violation of ERISA.  While her initial

moving papers are silent on the issue, (*see generally* Dkt. No. 153), the

papers filed in response to State Farm's motion devote a mere two

sentences to it: "Regarding the application of the illness benefits to ERISA

... State Farm has failed and refused to produce a copy of the Plan's

annual report.  Since the Plan covers medical benefits, we cannot say as a

matter of law that [State Farm's] illness benefits is not protected by ERISA,"

(Pl. Resp. Mem. of Law at 15-16, Dkt. No. 162:18).  Then, in reply to State

Farm's opposition papers, LaVigna contends that State Farm should not be

permitted to argue that its leave policy is not covered by ERISA because

this argument was not asserted as a defense in State Farm's initial

pleading.  (*See* Pl. Reply Mem. of Law at 9, Dkt. No. 165:6 (citing Def.

Answer, Dkt. No. 51).)  The court rejects this latest assertion for several

reasons, not least of which is that State Farm asserted the argument in its

pre-answer motion, giving LaVigna paramount notice.  (*See* Def. Mot. to

30

Dismiss Mem. of Law at 21-23, Dkt. No. 32.)

And as to LaVigna's hollow assertion that without the annual report "we cannot say as a matter of law that the Plan is free of liability" under ERISA, the court cannot envision any set of circumstances in which production of the annual report would disprove the otherwise undisputed fact that the leave policy at issue here is not governed by ERISA.  In general, ERISA empowers plan beneficiaries to bring civil actions to recover any benefits owed under the terms of a qualifying employee welfare benefit plan.  *See Shea v. Wells Fargo Armored Serv. Corp.*, 810 F.2d 372, 376 (2d Cir. 1987).  However, in defining "employee welfare benefit plan," the regulations exclude coverage for "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons."  29 C.F.R. § 2510.3-1(b)(2).  The evidence here conclusively demonstrates that State Farm's paid sick leave and medical leave policy provides for the payment of employees' normal compensation out of the company's general assets during periods of medical leave.  (*See, e.g.*, Deighan Aff. ¶ 8, Dkt. No. 30:1; Deighan Aff., Exs. B, C, Dkt. Nos.

31

30:3-4.)  Therefore, even on the merits, LaVigna's cause of action for premature termination in violation of ERISA must fail as a matter of law.

In what appears to be an attempt to recategorize—or resurrect—her Count Five claim, LaVigna now asserts for the first time that the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*., (FMLA) is a basis for State Farm's liability.  (*See* Pl. Mem. of Law at 16-17, Dkt. No. 153:12.) However, the court finds no mention, reference, or citation to the FMLA in the record that predates such assertions.  There is nothing in the original or amended complaint specifically or implicitly alleging State Farm's liability under FMLA.  (*See* Am. Compl., Dkt. No. 28; *see also* Compl., Dkt. No. 1:2.)  Nor was there any discussion or mention of the FMLA during the hour-long August 7, 2008 motion hearing.  (*See* Dkt. Nos. 47, 49, 54.) LaVigna now incredulously argues that the allegations contained in Count Five of the amended complaint somehow "encompass[] FMLA violations." (Pl. Mem. of Law at 15, Dkt. No. 162:18.)  The court, however, is neither willing nor able to give such a boundless and unpredictable reading to an otherwise narrow set of allegations, particularly at this point in the proceedings.  Therefore, insofar as LaVigna now contends that she is asserting claims under the FMLA, those claims are dismissed.

Yet LaVigna persists, "[e]ven without FMLA, causes of action sounding in [s]tate law breach of contract and unjust enrichment are encompassed [by Count Five]." (Pl. Resp. Mem. of Law at 15, Dkt. No. 162:18.)  There are no allegations in Count Five or the complaint generally that would have alerted State Farm to an unjust enrichment cause of action.  *See Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983) ("To recover [for] unjust enrichment[,] a plaintiff must [allege] that the defendant was enriched, that such enrichment was at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to the plaintiff." (citation omitted)).  Likewise, the court is unwilling at this late stage of the proceedings to give LaVigna's complaint a capricious translation and thereby force State Farm to adjust to an ever-moving target by now having to defend a breach of contract claim.  Nor would it be fair to allow LaVigna to raise such a claim for the first time in her response memorandum of law. Accordingly, any potential claim for unjust enrichment or breach of contract is dismissed.

### E.   <u>Motion to Amend</u>

LaVigna surreptitiously requests that she be allowed to amend her

amended complaint to introduce the words "Family and Medical Leave Act (29 U.S.C. § 2901, *et seq.*, hereinafter 'FMLA') to paragraph 69." (Pl. Resp. Mem. of Law at 11, 162:18; *see also* Proposed 2d Am. Compl., Dkt. No. 170.) In support of this request, she argues that State Farm "cannot credibly argue it was not on notice of FMLA implications or would suffer prejudice." (Pl. Resp. Mem. of Law at 11, 162:18.) Yet, in the court's view, it is LaVigna who cannot credibly make such an argument. Over two years have passed since she first amended her complaint, discovery has concluded, and this matter is on the verge of being trial ready. Therefore, the court denies the motion to amend as unduly delayed, prejudicial to State Farm, and bordering on bad faith. *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987).

## IV. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Randolph F. Treece's October 13, 2009 Order (Dkt. No. 137) is **AFFIRMED** and LaVigna's appeal (Dkt. No. 142) is **DENIED**; and it is further

**ORDERED** that LaVigna's motion for summary judgment (Dkt. No. 153) is **DENIED**; and it is further

34

**ORDERED** that State Farm's motion for summary judgment (Dkt. No. 154) is **GRANTED** in part and LaVigna's causes of action for compensation under State Farm's leave policy pursuant to ERISA, the FMLA, unjust enrichment, and breach of contract are **DISMISSED**; and it is further

**ORDERED** that State Farm's motion for summary judgment (Dkt. No. 154) is **DENIED** as to LaVigna's remaining claims; and it is further

**ORDERED** that LaVigna's motion to preclude (Dkt. No. 162) the affidavit of Christopher Farnum is **DENIED**; and it is further

**ORDERED** that LaVigna's motion to amend (Dkt. No. 162) is **DENIED**; and it is further

**ORDERED** that LaVigna's motion to disregard (Dkt. No. 170) State Farm's reply memorandum of law (Dkt. No. 169) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 23, 2010
Albany, New York

United States District Court Judge

35